# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 13, 2010

No. 10-10126
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

TONY ANTHONY JOHNSON

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas, San Angelo Division

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant Tony Anthony Johnson appeals his sentence entered after a guilty plea conviction for bank robbery in violation of 18 U.S.C. § 2113(a). Specifically, Johnson challenges the four-level enhancement applied to his sentence under U.S.S.G. § 2B3.1(b)(4)(A). Finding no error, we affirm.

I.

Pursuant to a plea agreement, Tony Anthony Johnson pleaded guilty to bank robbery. The factual basis, which was signed by Johnson and his trial counsel, provided that Johnson robbed the BBVA Compass Bank in Winters, Texas; he took bags of money later determined to contain $1880 and went out of the front door; he ran back into the bank when he saw police officers arriving;

No. 10-10126

he jumped over the teller counter, grabbed a teller around the throat, and held a knife to her; he then released the teller and ran out of the back door of the bank. Johnson was arrested later the same day. At the rearraignment hearing, Johnson admitted that the facts set forth in the factual basis were true.

The Presentence Report (PSR) provided the following additional facts concerning the offense. After Johnson ran back into the bank, officers entered the bank through the front door with their guns drawn and ordered Johnson to stop. Johnson jumped over the teller counter, grabbed the teller around the throat with his arm, and held a knife to her. Johnson yelled at the officers to go back outside of the bank, and they exited. He started walking the teller toward the front of the bank and asked her if there was a back door. The teller told Johnson that there was a back door, it was locked, and she had the keys to the back door in her drawer. Johnson let go of the teller and walked behind her to the teller station; he kept pushing her forward and said, "hurry up, hurry up, or I am going to hurt you." After she got the keys, she walked to the back door with Johnson pushing her forward. After the teller unlocked the door, Johnson ran out of the bank.

The PSR assigned a base offense level of 20 pursuant to U.S.S.G. § 2B3.1(a) under the 2009 Sentencing Guidelines. Johnson received a two-level increase pursuant to § 2B3.1(b)(1) because the property of a financial institution was taken. He received a four-level increase under § 2B3.1(b)(2)(D) because a knife was used. He received an additional four-level increase under § 2B3.1(b)(4)(A) because he abducted a person to facilitate his escape. The probation officer recommended that Johnson receive a three-level reduction in his offense level based on his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b) and noted that the Government would formally move the court to grant the additional one-level reduction. The resulting total offense level was 27. Johnson's total criminal history score was seven, resulting in a criminal

No. 10-10126

history category of IV.  The resulting advisory guidelines range was 100 to 125 months of imprisonment.

Johnson objected to the four-level enhancement for abduction.  He argued that his actions did not amount to abduction as defined in the Guidelines and that instead he should have received a two-level increase for physically restraining the teller pursuant to § 2B3.1(b)(4)(B).[1]  He argued that the four-level enhancement usually applies in cases in which the defendant forces an individual by threats or violence to accompany the robber to another location.  He asserted that the two-level enhancement is more appropriate in this case because the defendant merely physically restrained the teller and did not force the teller to accompany him to another location.  The probation officer responded that the four-level enhancement was appropriate because Johnson physically restrained the teller with his arm around her neck and held a knife to her throat; he yelled at the police officers to go back outside; he forced her to accompany him from place to place inside the bank for the purpose of facilitating his escape.

At the sentencing hearing, the Government presented the testimony of Federal Bureau of Investigation Special Agent John Broadway to support the four-level enhancement.  He testified that he interviewed two bank employees who were inside the bank at the time of the robbery and reviewed surveillance photos from the bank's digital video security system.  One photo depicts the teller standing at the teller drawer, with the other employee and Johnson standing on the opposite side of the counter.  Another photo shows Johnson jumping over the teller counter toward the teller; this occurred after Johnson

---

[1] Under § 2B3.1(b)(4)(B), a defendant should receive a two-level increase in his offense level if any person was physically restrained to facilitate commission of the offense or to facilitate escape. "Physically restrained" is defined as "the forcible restraint of the victim such as by being tied, bound, or locked up." § 1B1.1, comment. (n.1(K)).

3

encountered the responding police officers in the front of the bank. The next photo shows Johnson holding the teller in front of him with his left arm around her neck and his right hand holding a knife to her throat. The teller told Agent Broadway that she could feel the knife against her throat. According to the teller, Johnson forced her to walk along the back side of the teller counter until he could see out of the front door and could see police officers outside. He forced her to go back to her teller station, obtain the keys to the back door, then walk to the back door and open it for him. When she got to her teller station, Johnson let her go, but he was right behind her, pushing her and telling her to hurry up or he would hurt her. The last photo shows the teller approaching the back door with Johnson behind her. Agent Broadway estimated that Johnson forced the teller to walk approximately 85 feet around the inside of the bank with a knife held to her throat and that Johnson had held the teller for approximately 37 to 55 seconds.

Johnson's counsel renewed her objection to the enhancement, but did not dispute the above facts or present any evidence to rebut the testimony of Agent Broadway. The district court overruled the objection and found that the four-level enhancement should be assessed because Johnson abducted the bank teller during the course of the bank robbery. After the district court overruled his objection and adopted the PSR, The district court sentenced Johnson to 125 months of imprisonment, stating that it believed the sentence adequately addressed the sentencing objections of punishment and deterrence, as well as the other factors in 18 U.S.C. § 3553(a). Johnson timely filed a notice of appeal.

## II.

Johnson argues that the district court erred in applying the four-level enhancement under § 2B3.1(b)(4)(A), because he did not abduct or force the

teller to accompany him to another location. Following *Booker*,[2] sentences are reviewed for reasonableness in light of the sentencing factors in § 3553(a). *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005). In *Gall v. United States*, 552 U.S. 38, 50-51 (2007), the Supreme Court bifurcated its test for determining the reasonableness of a sentence. Under this test, this court first determines whether the district court committed any significant procedural error, such as failing to calculate or incorrectly calculating the guidelines range, treating the Guidelines as mandatory, failing to consider the factors in § 3553(a), basing the sentence on clearly erroneous facts, or not adequately explaining the sentence, including any deviations. *Id.* at 51. If there is no procedural error, this court then "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* Where, as here, the defendant objects to a sentencing enhancement in the district court, this court reviews the district court's interpretation and application of the Guidelines de novo and its factual findings for clear error. *United States v. Gonzalez*, 445 F.3d 815, 817 (5th Cir. 2006).

Under § 2B3.1, a defendant should receive a four-level increase in his offense level "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape." § 2B3.1(b)(4)(A). A victim is "abducted" if he is "forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction." U.S.S.G. § 1B1.1, comment. (n.1(A)); § 2B3.1, comment. (n.1).

This court has held that in determining whether the abduction enhancement is applicable, the term "different location" should be interpreted flexibly on a case by case basis. *United States v. Hawkins*, 87 F.3d 722, 726-28 (5th Cir. 1996). In *Hawkins,* this court considered whether the moving of a

---

[2] *United States v. Booker*, 543 U.S. 220 (2005).

victim at gunpoint for 40 to 50 feet across a parking lot toward a van constituted an abduction, even though the victim escaped before being put into the van. This court determined that the term, "a different location," as used in the comments to § 1B1.1, is "flexible and thus susceptible of multiple interpretations, which are to be applied case by case to the particular facts under scrutiny, not mechanically based on the presence or absence of doorways, lot lines, thresholds, and the like." *Id.* at 727-28. Therefore, this court determined that the district court did not commit reversible error in determining that an abduction had occurred because "it would be unduly legalistic, even punctilious" to determine that the two parking locations were not separate "locations" for purposes of § 1B1.1 or that "something as coincidental and insignificant as a lot line or doorway could make or break the determination of 'different location.'" *Id.*

Other cases from this circuit have similar holdings that support the district court's conclusion that the abduction enhancement should apply to the facts of this case. In *United States v. Jefferson*, 258 F.3d 405, 409-12 (5th Cir. 2001), the car jacking victim was sitting in her car in a mall parking lot, when the defendant jerked open her door, grabbed her by the hair, and put a gun in her face. The victim fought with the assailant and managed to get out of her car, only to be struck in the head and forced back into the vehicle. *Id.* She subsequently managed to jump out of the moving vehicle. *Id.* The court determined that her movement back into the vehicle after attempting to escape constituted an abduction to a different location for sentence enhancement purposes. *Id.* at 412.

In *United States v. Hefferon*, 314 F.3d 211, 225-26 (5th Cir. 2002), the court held that an abduction occurred when the defendant moved the victim from some trees near a playground where he had sexually assaulted her, to a garbage repository where he sexually assaulted her again. The court noted that

"[a]bduction increases the gravity of sexual assault or other crimes because the perpetrator's ability to isolate the victim increases the likelihood that the victim will be harmed." *Id.* at 226 (internal quotations and citation omitted). The court determined that the enhancement should not be applied mechanically and that it was "not precluded merely because the different location is on the same lodging facility property." *Id.*

In an unpublished case, this court affirmed the application of the abduction enhancement where the defendant pointed his weapon at two bank employees and demanded that they enter the bank. *United States v. Garcia*, 2001 WL 1267728 (5ir Cir. 2001).[3] The employees had not planned to enter the bank at the time that the defendant approached them. *Id.* This court found that the district court did not clearly err in holding that the abduction enhancement applied. *Id.* In an unpublished case similar to the instant one, this court affirmed the application of the abduction enhancement where the defendant forced security guards to move around within the bank, although he argued that he did not have the intent to abduct them. *United States v. Sutton*, 337 F. App'x 422 (5th Cir. 2009). However, the court also affirmed on the alternative ground that the sentencing court stated it would have imposed same sentence even if enhancement were not applicable.

The Fourth Circuit has affirmed the application of the abduction enhancement in cases involving movement from one section of a store to another. *Osborne*, 514 F.3d at 389-90. In *Osborne*, the defendant moved the victims through the secured door of the pharmacy department of a Walgreens store, across the store through the aisles, to the front of the store. *Id.* at 389-90. The

---

[3] Although unpublished cases from this court rendered after January 1, 1996, and decisions from other circuit courts are not controlling precedent, they may be considered persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006); *United States v. Sauseda*, 596 F.3d 279, 282 (5th Cir. 2010) (stating that decisions from other circuits are persuasive authority); 5TH CIR. R. 47.5.4.

court determined that the pharmacy and the store area were different locations within the Walgreens building, given that the pharmacy was divided by a counter as well as a secured door which was passable only by authorized persons via a keypad. *Id.* at 390. The court also noted that the defendant forced the victims to accompany him as he made his way frm the pharmacy section to the front door so he could "keep[ ] [the] victims close by as readily accessible hostages." *Id.* at 390; *see also United States v. Coates*, 113 F. App'x 520 (4th Cir. 2004), *vacated on other grounds*, 544 U.S. 916 (2005) (vacating and remanding case in light of *Booker*)(affirming the application of the abduction enhancement where the defendant accosted an eleven-year-old girl in Target store, moved her from department to department, threatened her with a knife, and sexually assaulted her).

According to Johnson, the abduction enhancement should not apply because he did not force the teller to enter or exit a structure and when she unlocked the back door, he did not make any attempt to take her with him from the bank. He maintains that this case does not involve the threat of additional harm that abduction can present. He asserts that this court has never held that movement within a single enclosed structure constitutes abduction, much less movement within the same room of a single enclosed structure. Johnson also asserts that the Fourth Circuit's cases, *United States v. Osborne*, 514 F.3d 377, 380-81 (4th Cir. 2008), and *United States v. Coates*, 113 F. App'x 520 (4th Cir. 2004), are distinguishable because they involved the movements of victims from one department of a store to another; here, the bank had only one room with no separate, distinct sections.

The Seventh Circuit has held that the abduction enhancement did not apply in a similar robbery case. The Seventh Circuit determined that an abduction enhancement should not apply in a case similar to the instant one involving a string of armed robberies in which the defendants forced the victims

to move around within the same building. *United States v. Eubanks*, 593 F.3d 645, 648 (7th Cir. 2010). In a robbery of a beauty store, one of the robbers forced an employee at gunpoint into a back room to retrieve the store's surveillance video. *Id.* In another robbery of a jewelry store, the defendant hopped over the counter and forced an employee to the ground at gunpoint. *Id.* The defendant then dragged a second employee from the back room to the front room, causing the employee to suffer scratches and bruises. *Id.* The Seventh Circuit distinguished the case from *Osborne* and found that under the circumstances of the case, transporting the victims from one room to another was not enough to constitute abduction. *Id.* at 653. The court noted in particular that "the victims in *Osbourne* were essentially taken hostage to facilitate the defendant's escape – which is the type of conduct 'plainly targeted by the abduction enhancement.'" *Id. citing Osbourne*, 514 F.3d at 390. The court also recognized that although there might be situations where an abduction enhancement was proper even though the victim remained within a single building, those facts were not present in that case. *Id.* at 653-54.

We think this case presents the type of situation where the abduction enhancement is proper, even though the victim remained within a single building. Johnson jumped over the teller counter to the employee section of the bank and used the teller as a hostage to force the police to retreat from the bank. He then forced the victim to accompany him to the front of the bank. When Johnson saw that the police were in front of the bank, the defendant asked the victim if there was a rear exit. She told him there was a locked back door and that she had a key in her drawer. He then forced her back to her teller station to retrieve the key and then forced her to accompany him to the rear door to unlock it for  him, facilitating his escape. On the facts of this case, the district court did not err in applying the abduction enhancement.

No. 10-10126

III.

For the foregoing reasons, Johnson's sentence is affirmed.

AFFIRMED.