# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 10, 2012

No. 11-20563

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

MICHAEL JAMES WASHINGTON

Defendant - Appellant

———————

No. 11-20564

———————

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

MICHAEL ANTHONY WILBOURN

Defendant - Appellant

———————

No. 11-20567

———————

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

No. 11-20563

RONALD DWAYNE THOMAS

Defendant - Appellant

_____

Appeals from the United States District Court
for the Southern District of Texas
USDC Nos. 4:10-CR-788-1, 4:10-CR-788-2, and 4:10-CR-788-3

_____

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a bank robbery in which three co-defendants pleaded guilty and received two sentencing enhancements, which they challenge. The first is a two-level enhancement for bodily injury pursuant to § 2B3.1(b)(3)(A) and the second is a four-level enhancement for abduction pursuant to § 2B3.1(b)(4)(A).

Because there is sufficient evidence in the record of a bodily injury and because the injury is of a kind for which most victims would typically seek medical attention, we conclude that the application of the bodily-injury enhancement was appropriate. Furthermore, because the defendants forced the victims to move, at gunpoint, from the customer-service area of the bank to the vault, we conclude that the application of the abduction enhancement was also appropriate. Therefore, we AFFIRM the judgment of the district court.

## BACKGROUND

Michael James Washington, Michael Anthony Wilbourn, and Ronald Dwayne Thomas were charged with aiding and abetting armed bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), (d) (count one) and with aiding and abetting

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 11-20563

the brandishing of a firearm during a crime of violence in violation of 18 U.S.C. §§ 2, 924(c) (count two).[1]  Each co-defendant pleaded guilty to the indictment without the benefit of written plea agreements.

At the joint rearraignment hearing for Wilbourn and Thomas, the prosecutor recited as follows:[2]

> [O]n Thursday, October 14th of 2010, at about 9:45 a.m., the First National Bank located in the 5800 block of South Gessner, was robbed by four young black males. . . .
>
> The bank robbers were later identified as Mr. Randle, Mr. Wilbourn, Mr. Washington, and Mr. Thomas.
>
> Of the four individuals, Mr. Wilbourn, Mr. Washington and Mr. Thomas entered the bank and there were three bank employees that they directly addressed.  Mr. Wilbourn, Mr. Washington, and Mr. Thomas were all each armed with a pistol.  Mr. Wilbourn approached one of the bank employees, Ms. Solis, who was standing in the lobby.  He pointed a pistol at her and ordered her to get to the ground.  Mr. Wilbourn approached another bank employee, Ms. [Sanghvi,] who was seated at her desk in the lobby, pointed a pistol at her and instructed her to get to the ground.
>
> Mr. Washington pointed a pistol at another employee, Ms. [Dorsey], who was working behind the teller counter, instructed her to open the door which leads from the lobby area to the vault room, as well as to the area behind the teller counter.
>
> Mr. Wilbourn, Washington, and Thomas ordered the employees to the vault room, where they demanded money.  Each of the three threatened to shoot the employees if they did not hurry up and show them where the money was.
>
> Mr. Thomas had assaulted Ms. [Dorsey] by grabbing her hair.  Mr. Wilbourn assaulted Ms. [Dorsey] by grabbing her hair and striking her face.

---

[1] A fourth co-defendant, Kenneth R. Randle, was charged only in the bank robbery count.

[2] A separate rearraignment hearing was held for Washington at which the prosecutor recited substantially the same facts.

3

No. 11-20563

Ms. Solis, fearing for her life, informed Mr. Wilbourn, Washington and Thomas that she had the money in her teller drawer. Ms. Solis gave her teller drawer key to Ms. [Dorsey], and Ms. [Dorsey] and Mr. Thomas retrieved money from Ms. Solis'[s] teller drawer.

Mr. Washington approached Ms. Solis, again pointing a pistol at her, and demanded to know where the rest of the money was. Ms. [Dorsey], fearing for her life, opened the vault, at which time Mr. Washington removed some money from the vault while Mr. Wilbourn and Mr. Thomas maintained control of the bank employees.

After obtaining the money [and] prior . . . to leaving the bank, Mr. Wilbourn and Mr. Thomas and Mr. Washington all threatened to shoot the bank employees if they moved.

Wilbourn and Thomas agreed that the factual basis in its entirety was true, and Washington agreed that the substantially the same facts recited by the prosecutor at his rearraignment hearing were true in their entirety.

In the presentence report (PSR), the probation officer recommended imposing a two-level enhancement pursuant to § 2B3.1(b)(3)(A) because a victim sustained a bodily injury. This enhancement was based on the probation officer's finding that, during the robbery, Wilbourn struck one of the bank employees in the face with his fist, causing her pain.

The probation officer also recommended imposing a four-level enhancement pursuant to § 2B3.1(b)(4)(A) because bank employees were abducted during the offense.[3] This enhancement was based on the probation officer's finding that, during the robbery, Washington, Wilbourn, and Thomas ordered the bank employees to move, at gun point, from the lobby of the bank to the vault area so that the robbers could obtain money.

---

[3] The probation officer misidentified the relevant Guidelines subsection as § 2B3.1(b)(4)(B).

4

No. 11-20563

Washington, Wilbourn, and Thomas objected to the PSR. Wilbourn and Thomas argued that the application of the enhancement for bodily injury was inappropriate because the injury suffered was insufficient to support the enhancement. All three objected to the application of the abduction enhancement, arguing that they did not abduct anyone during the offense because ordering bank employees to the vault area was insufficient to support the enhancement.

At sentencing, one of the bank employees, Ms. Dorsey, testified that, during the robbery, she was punched in the face by Washington, not Wilbourn. She did not aver that the punch caused her to be injured, that she suffered pain, or that she sought medical attention.

The district court conducted a joint sentencing hearing for the four defendants. The district court determined that a punch to the face was a bodily injury under § 2B3.1(b)(3)(A) and overruled the defendants' objections to the application of the bodily-injury enhancement. The court also ruled that ordering the bank employees to move to the vault constituted abduction under § 2B3.1(b)(4)(A) and denied the defendants' objections to the application of the abduction enhancement.

The district court sentenced Washington to a total of 234 months of imprisonment, Wilbourn to a total of 181 months of imprisonment, and Thomas to a total of 221 months of imprisonment. The court also imposed on each defendant terms of supervised release and assessed a special assessment and restitution payment on all defendants. Washington, Wilbourn, and Thomas each filed timely notices of appeal.

## STANDARD OF REVIEW

By objecting to the enhancements, Washington, Wilbourn, and Thomas have preserved these issues for appellate review. *See United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). This court reviews the district court's application

5

No. 11-20563

or interpretation of the Guidelines *de novo* and its factual findings for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). "Unless the factual finding is implausible in light of the record as a whole, it is not clearly erroneous." *United States v. Griffith*, 522 F.3d 607, 611-12 (5th Cir. 2008).

## DISCUSSION

### A.

#### 1.

Section 2B3.1, which pertains to robbery, provides that a defendant whose offense involves a "bodily injury" shall receive a two-level increase to his or her offense level. U.S.S.G. § 2B3.1(b)(3)(A). Bodily injury means "any significant injury; *e.g.*, an injury that is painful and obvious, *or* is of a type for which medical attention ordinarily would be sought." *Id.* § 1B1.1 cmt. n.1(B) (emphasis added).

#### 2.

Washington, Wilbourn, and Thomas argue that the district court erred in imposing a two-level enhancement pursuant to § 2B3.1(b)(3)(A) based on Dorsey having sustained a bodily injury during the robbery. They maintain that although Washington punched a bank employee in the face, this did not cause a bodily injury within the meaning of that section because (1) the government did not produce any evidence that any injury suffered was painful or obvious; (2) Dorsey's injury is not the type for which a person would typically seek medical attention because it did not involve bleeding, swelling, or pain; and (3) Dorsey in fact declined medical treatment at the scene of the crime.

These arguments are without merit. First, the PSR states that Dorsey felt pain, an assertion confirmed by Dorsey's interview with the probation officer, in which she told him "that she was punched on the nose with a closed fist, which caused her pain in that area." This is sufficient to show that the injury was

painful.  Regarding the obviousness of the injury, although the government conceded that there were no "obvious open wounds, bleeding wounds, anything like that that required immediate medical attention," we find the lack of bruising, swelling, or bleeding is not dispositive.  The defendants attempt to rely on *United States v. Guerrero*, in which, although the victim was pistol whipped and struck in the back, the court reversed the application of the bodily-injury enhancement, 169 F.3d 933, 945, 947 (5th Cir. 1999).  However, their reliance is misplaced because that case is factually distinguishable.  First, we observed that the district court incorrectly defined "bodily injury." *Id.* at 947.  Second, we noted that there was "*no evidence of any injury*" in the record. *Id.*  Although we suggested that "an exception lies for certain types of attacks for which the resulting injury follows automatically and is obvious," we specifically noted that that was *not* the case in *Guerrero* and thus had no opportunity to further explicate that standard. *Id.*[4]  Both errors, we concluded, justified reversal.  By contrast, the district court in this case correctly defined bodily injury, and there is sufficient evidence of Dorsey's injury in the record to justify the application of the bodily-injury enhancement.

Within this circuit, we have affirmed the application of the bodily-injury enhancement in cases involving minor but identifiable injuries.[5]  Other circuits have also affirmed enhancements based on identifiable injuries.[6]  However, we

---

[4] Even if we were to endorse this dictum from *Guerrero*, it would suggest that some injuries are so necessarily obvious that no evidence would need to be presented in order to justify application of the bodily-injury enhancement. *See id.*  Were that the case, it would still provide no guidance on whether the evidence in this case is sufficient for that enhancement.

[5] *See United States v. Jefferson*, 258 F.3d 405, 413-14 (5th Cir. 2001) ("knot" on head, cuts, scrapes, and bruises); *United States v. Green*, 455 F. App'x 469, 472 (5th Cir. 2011) (temporary hearing loss, irritation, and ringing in ears for which victim sought medical attention).

[6] *See United States v. Maiden*, 606 F.3d 337, 339-40 (7th Cir. 2010) (burning sensation in eyes from mace, causing victim to be unable to wear contact lenses), *cert. denied*, 131 S. Ct.

cannot conclude that the bodily-injury enhancement applies *only if* the injury was *both* painful *and* obvious or identifiable. For instance, in *United States v. Fitzwater*, the Sixth Circuit affirmed the application of the bodily-injury enhancement to a co-defendant involved in an armed bank robbery in which one of the bank tellers sustained an injury when she "hit her head and hip on her teller's drawer in the course of lying down on the floor during the robbery." 896 F.2d 1009, 1012 (6th Cir. 1990). Although the precise contours of the injury the bank teller sustained were not discussed in great detail, *see id.*, it is not difficult to compare that injury to the one sustained here. If a victim hitting her head and hip on a drawer in the course of lying down is sufficiently obvious to warrant application of the bodily-injury enhancement, we see no difficulty holding the same as to a victim being struck in the nose by a closed fist.

Regarding the defendants' contention that, in order for the bodily-injury enhancement to apply, the injury must last for some meaningful period, we believe that this proposition has little support in precedent. Admittedly, the defendants may find some support for this proposition in *United States v. Lancaster*, in which the Fourth Circuit affirmed the finding that a security guard who was sprayed with mace did not suffer bodily injury because the effect was momentary and produced no lasting harm. 6 F.3d 208, 210 (4th Cir. 1993). However, stretching a denial of the enhancement for a "momentary" injury that

---

348 (2010); *United States v. Hargrove*, 201 F.3d 966, 969-70 (7th Cir. 2000) (injured neck muscle for which muscle relaxants were prescribed); *United States v. Hoelzer*, 183 F.3d 880, 882-83 (8th Cir. 1999) (bruises to face, chest, and legs); *United States v. Taylor*, 135 F.3d 478, 482 (7th Cir. 1998) (several injuries from mace that required victims to obtain medical treatment and miss several days of work); *United States v. Perkins*, 132 F.3d 1324, 1326 (10th Cir. 1997) ("small laceration and bruising" and continued neck and shoulder pain); *United States v. Robinson*, 20 F.3d 270, 278-79 (7th Cir.1994) (pain for hours and residual effects for days from mace); *United States v. Hamm*, 13 F.3d 1126, 1127-28 (7th Cir. 1994) (victim knocked down, causing bumps, bruises, and a back injury that required chiropractic treatment); *United States v. Greene*, 964 F.2d 911, 912 (9th Cir. 1992) (slap in the face, causing pain, swelling, and redness); *United States v. Isaacs*, 947 F.2d 112, 114-15 (4th Cir. 1991) (slap in the face, causing red and puffy mark).

No. 11-20563

produced no lasting harm into a requirement that the injury must last for some meaningful period strikes us as a bridge too far. Moreover, any requirement that the injury last for some meaningful period is not a necessary—although it may, under certain circumstances, be a sufficient—condition for application of the enhancement. In fact, the text of the enhancement contains no such duration component. *See* U.S.S.G. § 2B3.1(b)(3)(A).

Second, application of the bodily-injury enhancement does not require that the victim in fact seek medical treatment. *See id.* § 1B1 cmt. n.1(B) (defining "bodily injury" as "any significant injury; *e.g.*, an injury that is painful and obvious, *or* is of a type for which medical attention *ordinarily would be sought*") (emphasis added); *Guerrero*, 169 F.3d at 946-47. Therefore, the defendants' emphasis on the fact that Dorsey did not seek medical attention is not dispositive. Rather, we conclude that a closed-fist punch to the nose is the kind of injury for which most victims would normally seek medical treatment.

In this case, there is sufficient evidence that the injury Dorsey sustained was painful; it is not difficult to describe being punched in the nose with a closed fist as sufficiently obvious for the purpose of the bodily-injury enhancement; and it is enough to reason that such an injury is the type for which most victims would seek medical treatment. Accordingly, we conclude that the application of the bodily-injury enhancement was warranted.

B.

1.

Under § 2B3.1, a defendant shall receive a four-level increase in his or her offense level "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(A). A victim is "abducted" if he

9

or she is "forced to accompany an offender to a different location." *Id.* § 1B1.1 cmt. n.1(A).[7]

We have held that, in determining whether the abduction enhancement is applicable, the term "different location" should be interpreted flexibly and on a case-by-case basis. *United States v. Hawkins*, 87 F.3d 722, 727-28 (5th Cir. 1996). For example, in *United States v. Johnson*, the defendant argued that the application of a four-level enhancement based on § 2B3.1(b)(4)(A) was not warranted because he did not force a teller to enter or exit a structure and he did not remove her from the bank. 619 F.3d 469, 473 (5th Cir. 2010). He also argued that there was no threat of additional harm that abduction could present and that we had never held that movement within a single enclosed structure or within the same room of a single enclosed structure constituted abduction. *Id.* at 473-74. Nevertheless, we determined that application of the abduction enhancement was proper even though the teller remained in a single room; the defendant used the teller to accompany him from her teller station to the front of the bank, then forced her back to her teller station, and, finally, forced her to accompany him to the rear door of the bank to facilitate his escape. *Id.* at 474. Thus, application of the abduction enhancement does not depend on a finding that a victim was forced to enter or exit a structure. *See also United States v. Osborne*, 514 F.3d 377, 388-90 (4th Cir. 2008) (holding that "an abduction enhancement may properly be applied even though the victim remained within the confines of a single building").

2.

Washington and Thomas argue that the district court erred in imposing a four-level enhancement pursuant to § 2B3.1(b)(4)(A) because the offense

---

[7] The comments to § 1B1.1 provide as an example "a bank robber's forcing a bank teller from the bank into a getaway car." *Id.*

10

conduct did not constitute abduction even under the flexible standard adopted by this court.[8]

Washington and Thomas make a number of arguments in opposition to the application of the abduction enhancement—that no victim was removed from the building or taken across some threshold, that no victim was forced to depart with the defendants in their getaway vehicle, that no hostages were taken to facilitate escape, and that the victims were moved together from the bank-teller area to the vault area—but we find none of them persuasive. First, movement within a building may constitute movement "to a different location" within the meaning of the abduction enhancement. *See Johnson*, 619 F.3d at 474. In other words, that the bank employees remained within the bank is not dispositive. Second, the abduction enhancement applies where a victim is abducted "to facilitate the commission of the offense *or* to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(A) (emphasis added). Thus, that the defendants did not force the victims to accompany them in their getaway vehicle or take them hostage in order to facilitate escape is immaterial. The defendants forced Dorsey, Sanghvi, and Solis to move, at gunpoint, from the lobby and teller area of the bank to the vault where Solis entered the vault's access code, thus enabling the robbers to commit the crime. Washington and Thomas do not dispute this. The forced movement of a bank employee from one room of a bank to another—so long as it is in aid of commission of the offense or to facilitate escape—is sufficient to support the enhancement given the flexible approach we have adopted in this circuit. *See Johnson*, 619 F.3d at 474. Finally, nothing in the abduction enhancement

---

[8] The two also contend that application of the enhancement was improper because the probation officer incorrectly cited § 2B3.1(b)(4)(B)—instead of § 2B3.1(b)(4)(A)—in the PSR. In the Addendum to the PSR, however, the probation officer correctly cited § 2B3.1(b)(4)(A). Moreover, this typographical error in the PSR is insufficient for reversal. *See United States v. Huerta*, 182 F.3d 361, 363-65 & n.1 (5th Cir. 1999) (upholding guidelines enhancement despite typographical error in citation to guidelines section in the PSR that was corrected in addendum).

requires that the victims be separated in order for the enhancement to be applied. *See* U.S.S.G. § 2B3.1(b)(4)(A). Accordingly, we conclude that the application of the abduction enhancement was warranted.

## CONCLUSION

For the foregoing reasons, we AFFIRM the application of both the bodily-injury and abduction enhancements.