## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20542

United States Court of Appeals
Fifth Circuit

**FILED**

March 18, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee

v.

LARRY SMITH; RAYMOND TIERRA JOHNSON, also known as "T",

　　　　Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CR-61

Before STEWART, Chief Judge, and REAVLEY and DAVIS, Circuit Judges.

PER CURIAM:[*]

　　Larry Smith, Raymond Tierra Johnson (collectively, the "Appellants"), and eleven co-defendants were charged in a superseding indictment with a number of offenses related to a string of bank robberies in the Houston, Texas, area. Following a four-day trial, a jury found Appellants guilty on all counts, and the district court sentenced each to a lengthy term of imprisonment. Both Appellants filed timely appeals challenging their sentences on various

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

grounds. Johnson also appeals his conviction. For the reasons explained herein, we AFFIRM.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

At trial, the Government presented evidence that the Appellants, along with their co-conspirators, engaged in a series of increasingly violent bank robberies in the Houston, Texas, area between August and December 2010. The robberies began as "note robberies," in which a bank robber simply passed the teller a threatening note demanding money, and escalated to "takeover robberies," where the robbers typically used violence and the threat of violence to take money from the bank.

In connection with these bank robberies, Smith was charged in a superseding indictment with: one count of conspiracy to commit bank robbery by force, violence, and intimidation (Count 1S); seven counts of bank robbery (Counts 2S, 3S, 4S, 7S, 8S, 10S & 12S); and three counts of use of a firearm in furtherance of a crime of violence (Counts 5S, 11S & 13S). Johnson was charged in the same superseding indictment with: one count of conspiracy to commit bank robbery by force, violence, and intimidation (Count 1S); two counts of bank robbery (Counts 10S & 14S); two counts of use of a firearm in furtherance of a crime of violence (Counts 11S & 15S); and one count of hostage taking (Count 16S).[1]

At trial, the Government elicited testimony from at least one co-conspirator regarding each of the eight bank robberies charged in the indictment (amongst other corroborating evidence). Following a four-day trial, a jury found Appellants guilty on all counts.

Johnson's PSR calculated a total offense level of 36 and a criminal history category of VI, yielding a Guidelines range of 324 to 405 months. In

---

[1] The district court dismissed Count 16S before trial.

No. 13-20542

addition, Counts 11S and 15S required mandatory consecutive terms of imprisonment of seven and twenty-five years, respectively. The district court sentenced Johnson to 744 months' imprisonment and five years' supervised release.

Smith's PSR calculated a total offense level of 41 and a criminal history category of IV, yielding a Guidelines range of 360 months to life. In addition, Counts 11S, 5S, and 13S required mandatory consecutive terms of imprisonment of seven, twenty-five and twenty-five years, respectively. The district court sentenced Smith to 1,080 months' imprisonment and five years' supervised release.

## II.     DISCUSSION

Appellants' challenges on appeal fall into three categories: (1) Johnson's evidentiary arguments relating to his conviction; (2) Johnson's challenge to his sentence; and (3) Smith's challenges to his sentence. We address each in turn.

### A.

Johnson argues that the district court erred in several of its evidentiary rulings and that these errors, collectively, require this court to vacate his conviction. We disagree. Most of Johnson's challenges are squarely foreclosed by precedent or were comfortably within the district court's discretion. Further, to the extent that the district court erred, such error was harmless in light of the overwhelming evidence put on by the Government at trial.

### i.

Johnson first argues that the district court erred in admitting certain summary charts of phone records into evidence. Under Federal Rule of Evidence 1006, a party "may use a [summary] chart . . . to prove the content of voluminous [records] that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying . . . by other parties at a reasonable time and place." Fed. R. Evid.

3

1006. The Government met all of the elements of Rule 1006: Johnson does not dispute that the relevant charts summarized voluminous records (300,000 phone records) and that he received the underlying records before trial. Instead, Johnson claims that the district court erred because (1) the Government did not also enter the underlying phone records into evidence, and (2) the district court failed to provide a contemporaneous limiting jury instruction that the charts were not, themselves, proof of facts. These arguments are foreclosed by precedent. *See United States v. Valencia*, 600 F.3d 389, 417–18 (5th Cir. 2010) (holding that requiring the admission of underlying records "would contravene the plain language and purposes of Rule 1006"); *United States v. Williams*, 264 F.3d 561, 574–75 (5th Cir. 2001) (determining that "[a] summary chart that meets the requirements of Rule 1006 is itself evidence and no [limiting] instruction is needed").

**ii.**

Next, Johnson argues that the district court improperly admitted certain lay opinion testimony by Detective John Albin and FBI Special Agent Mark Michalek.

Detective Albin testified on direct examination generally about his observations at the scene of the bank robbery charged in Count 14S. This particular bank robbery was notable because Johnson was arrested while fleeing a short distance from the bank. On cross-examination, Johnson's counsel asked about a gun and a glove that Detective Albin found on a grassy median in between the bank and where Johnson was apprehended; specifically, he asked whether Detective Albin could determine if the placement of the items was "consistent with someone dropping [the gun] while they are running." On re-direct examination, the Government showed Detective Albin photos from inside the bank during the robbery and asked him

4

to compare the glove that he recovered with a glove that one of the robbers was wearing during the robbery.

Johnson argues that Detective Albin's testimony on re-direct examination was improper because it exceeded the scope of cross-examination, involved speculation, and invaded the province of the jury. As an initial matter, we conclude that Detective Albin's re-direct was properly within the scope of Johnson's cross-examination. Johnson's cross-examination was clearly intended to create doubt as to whether he could have been carrying the glove and gun at issue as he was fleeing the scene of the robbery charged in Count 14S. Thus, Johnson opened the door to a re-direct examination that attempted to tie him to those items. Because the re-direct examination was linked to issues brought up during cross-examination, the district court did not abuse its "wide discretion" by admitting the challenged testimony. *See* 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 611.03[5] (Mark S. Brodin, ed., Matthew Bender 2d ed. 2015); *see also United States v. Keith*, 582 F. App'x 300, 302 (5th Cir. 2014); *United States v. Reed*, 277 F. App'x 357, 362–63 (5th Cir. 2008). Further, there was nothing particularly speculative about Detective Albin comparing the glove he found at the scene with a glove that one of the bank robbers was wearing in a picture of the robbery, and his testimony did not invade the province of the jury as it was "based on observations and . . . did not tell the jury what verdict it should reach or state legal conclusions." *United States v. Flores-Diaz*, 176 F.3d 480, 1999 WL 155674, at *3 (5th Cir. 1999) (unpublished); *see also* Fed. R. Evid. 704.

Johnson raises a similar challenge to the testimony of Agent Michalek. Agent Michalek testified on direct examination that "DNA confirmation was found for Raymond Johnson" at the robbery charged in Count 14S. The Government's DNA expert had previously testified that Johnson's DNA could

not be excluded from a sample taken from a gun at the crime scene, but that he could not match Johnson to the DNA sample with scientific certainty.[2]

Johnson argues that Agent Michalek's testimony on direct examination was improper because he offered expert testimony as a lay witness, and the testimony that he provided regarding the DNA evidence was factually incorrect. We need not decide whether Agent Michalek's testimony crossed over into impermissible expert testimony because any error in admitting the evidence was harmless, as the other evidence of Johnson's guilt was overwhelming. *See United States v. Williams*, 957 F.2d 1238, 1244 (5th Cir. 1992) (holding admission of evidence harmless in light of overwhelming evidence of the defendant's guilt). For example, two of Johnson's co-conspirators in the charged robberies testified about participating in the robbery in Count 10S with Johnson, one testified about participating in the robbery in Count 14S with Johnson, and Officer Todd Ritz testified that he arrested Johnson as Johnson was fleeing the scene of the Count 14S robbery.

**iii.**

Finally, Johnson argues that the admission of several out-of-court statements made to law enforcement violated his rights under the Sixth Amendment's Confrontation Clause. Specifically, Agent Michalek testified that: (1) co-conspirator Carl Turner told him during the course of an interview that Smith recruited him for a bank robbery and that he had phone contact with Smith before the bank robbery; (2) co-conspirator Clayton McClenon stated that he allowed someone to use his van on the day of one of the bank robberies, that he filed a false police report claiming that the van was stolen,

---

[2] The DNA expert testified that he could only match the DNA sample to Johnson with scientific certainty if, *inter alia*, the odds of a random match were 1/308,000,000,000. He further explained that the probability of selecting an unrelated person at random in this case was 1/608,300,000 for whites, 1/761,000 for blacks and 1/840,300,000 for Hispanics.

and that his alias is "Poo-Poo"; and (3) Smith stated during the course of an interview that his income is derived from collecting disability, "girls," and gambling, that Poo-Poo is his brother, and that he knew that Poo-Poo's van was stolen and recovered.  Johnson failed to properly object to this evidence before the district court, and thus plain error review applies.  *See United States v. Cervantes*, 706 F.3d 603, 615–16 (5th Cir. 2013).

Johnson argues that the admission of Carl Turner's out-of-court statements violated his confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004).  We disagree.  Carl Turner testified at trial—in fact, he provided extensive testimony, including testimony regarding the two facts relayed in Agent Michalek's testimony.  Johnson also had the opportunity to cross-examine him regarding those facts.  Because Turner appeared at trial, his later-admitted out-of-court statements did not violate *Crawford*.  *See id.* at 50–59.

Johnson also challenges Clayton McClenon's out-of-court statements under *Crawford*.  However, the district court did not plainly err in admitting the testimony because it was not clearly introduced for the truth of the matter asserted.  *See Williams v. Illinois*, 132 S. Ct. 2221, 2228 (2012) ("[T]he Confrontation Clause . . . has no application to out-of-court statements that are not offered to prove the truth of the matter asserted.").  Clayton McClenon's statements regarding his van and his nickname were introduced in the context of how Agent Michalek developed suspects—in particular Smith—for the charged bank robberies.  This court has consistently held that "[o]ut-of-court statements . . . providing background information to explain the actions of investigators are not hearsay" as they are not offered for the truth of the matter asserted.  *See United States v. Lundy*, 676 F.3d 444, 455 (5th Cir. 2012)

(alteration in original); *United States v. Dunigan*, 555 F.3d 501, 507 (5th Cir. 2009); *United States v. Carrillo*, 20 F.3d 617, 619 (5th Cir. 1994).[3]

Finally, Johnson argues that the admission of Smith's out-of-court statements violated his confrontation rights under both *Crawford* and *Bruton v. United States*, 391 U.S. 123 (1968). First, Smith's statements do not constitute *Bruton* error because they do not directly implicate Johnson in the charged criminal acts. *See Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (non-testifying co-defendant's confession admissible under *Bruton* because it did not implicate the defendant on its face, and any implication of the defendant in the admitted statement required linkage with other trial evidence). Smith does not mention Johnson in the challenged statements and the conveyed information had only a tangential connection to Johnson's charged criminal conduct. Second, like McClenon's statements, the admission of Smith's out-of-court statements did not plainly violate *Crawford*, as they were introduced in the context of how Agent Michalek developed suspects, rather than for the truth of the matter asserted. *See Lundy*, 676 F.3d at 455; *Dunigan*, 555 F.3d at 507; *Carrillo*, 20 F.3d at 619; *Gonzales*, 606 F.2d at 77.[4]

Accordingly, we find no reason to disturb Johnson's conviction.

**B.**

We turn next to Johnson's sentencing challenge. Johnson appeals the district court's application of a two-point "use of minor" sentencing enhancement to Counts 10S and 14S. *See* U.S.S.G. § 3B1.4. "This court

---

[3] Even if introducing Clayton McClenon's statements was error, it did not affect Johnson's substantial rights: the statements were not particularly incriminating as to Johnson, all of the information conveyed in McClenon's statements also came out in the testimony of other witnesses, and the other evidence of Johnson's guilt was overwhelming.

[4] Further, any error in introducing Smith's out-of-court statements did not affect Johnson's substantial rights, as the statements were not particularly incriminating as to Johnson and the other evidence of Johnson's guilt was overwhelming.

reviews de novo the district court's guidelines interpretations and reviews for clear error the district court's findings of fact." *United States v. Miller*, 607 F.3d 144, 147 (5th Cir. 2010) (citation and internal quotation marks omitted).

The Sentencing Guidelines provide for a two-level enhancement if a defendant "used or attempted to use a person less than eighteen years of age to commit [an] offense or assist in avoiding detection of, or apprehension for, [an] offense." U.S.S.G. § 3B1.4. The Application Notes explain that "'[u]sed or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, comment. (n.1).

All parties agree that a minor must play an affirmative or active role in the relevant criminal conduct in order for the two-level sentencing enhancement to apply. *See United States v. Molina*, 469 F.3d 408, 414–15 (5th Cir. 2006) (holding that a minor's mere presence with the defendant during the offense is insufficient to apply the enhancement). Here, a minor—W.J.— clearly played an active role in the criminal conduct in both Counts 10S and 14S: he served as a getaway driver for the robbery in Count 10S and was assigned the role of a getaway driver for the robbery in Count 14S (although he ultimately fled the scene without any passengers).

Johnson's primary argument in response is that a U.S.S.G. § 3B1.4 sentencing enhancement applies only if he *personally* used or attempted to use a minor to commit an offense. In other words, he argues that mere criminal partnership with a minor is insufficient and that the enhancement is not appropriate based only on a co-conspirator's reasonably foreseeable use of a minor.[5]

---

[5] We have previously acknowledged a circuit split regarding whether the "use of a minor" enhancement is appropriate based only on a co-conspirator's reasonably foreseeable

No. 13-20542

We need not decide whether Johnson's interpretation of § 3B1.4 is correct, as his challenge fails regardless.  First, there was sufficient evidence to support a finding that Johnson directly involved W.J. in the criminal conduct in Count 10S: (1) Smith planned the robbery, but was in Las Vegas at the time it was carried out; (2) in Smith's absence, Johnson was in charge of directing the robbery; (3) W.J. participated in the robbery and served as Johnson's getaway driver; and (4) after the robbery, Johnson split up the proceeds amongst the participants, including W.J.[6] *See United States v. Robinson*, 654 F.3d 558, 563 (5th Cir. 2011) (upholding the enhancement where there was sufficient evidence from which to infer that the defendant directed a minor to take an action to assist the offense).  Second, there may not have been sufficient evidence to infer that Johnson directly used W.J. in Count 14S, but any error in applying the two-level sentencing enhancement to Count 14S was harmless: the enhancement had no impact on Johnson's ultimate Combined Adjusted Offense Level[7] and therefore had no effect on the Guidelines range calculation in Johnson's PSR.  *See United States v. Garcia-Gonzalez*, 714 F.3d 306, 315

---

use of a minor and have declined to decide the issue.  *See United States v. Ghali*, 184 F. App'x 391, 397 n.9 (5th Cir. 2006).  We take the same course here.

[6] W.J. also testified at trial that Johnson was directing the activity for this bank robbery.  For example, Johnson directed W.J. on where to drive as they were fleeing the robbery.

[7] The PSR did not group Counts 10S and 14S together for purposes of calculating Johnson's total offense level.  Instead, it used U.S.S.G. § 3D1.4 to calculate a Combined Offense Level.  Under this procedure, the PSR started with the offense with the highest offense level; here, Count 10S had the highest offense level, which was 35.  According to the chart in § 3D1.4, the PSR then increased the offense level by 1 level for any additional offense that is 5 to 8 levels less serious than the most serious offense (i.e., offenses with an offense level of 27 to 30).  Here, Count 14S had an offense level of 30; thus, the PSR added 1 level to the offense level in Count 10S, to arrive at a Combined Offense Level of 36.  If the PSR had not applied the two-level enhancement to Count 14S, the Count would have had an offense level of 28, which would still correspond to a 1 level increase to the offense level in Count 10S (i.e., it would still result in a Combined Offense Level of 36).

No. 13-20542

(5th Cir. 2013) (citing *United States v. Ramos*, 71 F.3d 1150, 1158 n.27 (5th Cir. 1995)).

Therefore, we conclude that Johnson's challenge to his sentence does not warrant remand.

## C.

Finally, we turn to Smith's sentencing challenges. Smith appeals the district court's application of four separate sentencing enhancements and argues that the cumulative error warrants resentencing. We disagree and hold that the district court did not commit reversible error.

### i.

Smith first challenges the district court's application of an "abduction" sentencing enhancement under U.S.S.G. § 2B3.1(b)(4)(A) to Counts 10S and 12S. The Sentencing Guidelines provide for a four-level sentencing enhancement if any person was abducted to facilitate commission of a robbery or to facilitate escape. U.S.S.G. § 2B3.1(b)(4)(A). "Abducted" is defined as follows: "a victim was forced to accompany an offender to a different location. For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction." U.S.S.G. § 2B3.1, comment. (n.1); U.S.S.G. § 1B1.1, comment. (n.1(A)).

In both Counts 10S and 12S, bank robbers forcefully moved various bank employees to different locations within the banks (e.g., the bank vaults) to aid in stealing money during the course of the bank robberies. Citing cases from other circuits, Smith argues that because the victims were only forcibly moved *within* the banks, the sentencing enhancement is inappropriate because none of the victims were moved to "another location."

However, we have consistently held that "[t]he forced movement of a bank employee from one room of a bank to another—so long as it is in aid of commission of the offense or to facilitate escape—is sufficient to support the

enhancement given the flexible approach we have adopted in this circuit." *United States v. Washington*, 500 F. App'x 279, 285 (5th Cir. 2012). Indeed, we have repeatedly applied this enhancement to factual situations very similar to those in Counts 10S and 12S. *See, e.g.*, *United States v. Bonner*, 575 F. App'x 250, 251 (5th Cir. 2014) (bank robbers moved bank manager from the floor of the bank to the bank vault, then from the bank vault to his office, then back to the bank vault).[8]

Thus, the district court did not err in applying the "abduction" sentencing enhancement.

## ii.

Smith next challenges the district court's application of a two-point "use of minor" sentencing enhancement to Count 12S. *See* U.S.S.G. § 3B1.4. Smith argues that the sentencing enhancement is inappropriate because the minor— W.J.—was merely present at the scene of the offense (i.e., he did not play an active role in the offense). In the alternative, Smith argues, like Johnson, that the enhancement does not apply because he did not personally take an affirmative action to involve W.J. in the charged criminal conduct. Again, we disagree.

Smith originally recruited W.J. to join the conspiracy to rob banks, and W.J. subsequently participated in a number of bank robberies planned by Smith. The evidence in the PSR provided sufficient evidence from which to

---

[8] *See also United States v. Holiday*, 582 F. App'x 551, 552 (5th Cir. 2014) (three armed bank robbers forced the bank manager and another employee to lie on the ground and then to get up and enter the adjoining cash room a few steps away to open the safe); *United States v. Randle*, 532 F. App'x 501, 501 (5th Cir. 2013) (bank robbers forced the tellers to move at gunpoint from the teller area to the vault area); *Washington*, 500 F. App'x at 285 (bank robbers forced bank victims to move, at gunpoint, from the lobby and teller area of the bank to the vault); *United States v. Green*, 426 F. App'x 246, 246 (5th Cir. 2011) (bank robber moved the teller from her teller station to the bank's vault and then to the back door of the bank); *United States v. Sutton*, 337 F. App'x 422, 423 (5th Cir. 2009) (bank robber moved security guards within the bank).

infer Smith attempted to use W.J. in a similar fashion for the bank robbery charged in Count 12S.  Prior to the robbery, W.J. met with Smith and others to plan the operation.  W.J. stated that the group, including Smith, planned to use W.J. as a driver in the robbery.[9]  W.J. then drove Johnson and Carl Turner to a Regions Bank, intending to be the getaway driver after they robbed the bank.  When the group changed plans and decided to rob a different bank, W.J. backed out of being the driver but remained in the getaway vehicle with Smith. Ultimately, the robbery did not go as planned, and the co-conspirators that entered the bank were apprehended.  Smith's original recruitment of W.J. for bank robberies, and his use or attempted use of W.J. as a getaway driver or to assist the getaway driver for the robbery in Count 12S fits squarely with the enhancement in U.S.S.G. § 3B1.4.  *See* U.S.S.G. § 3B1.4, comment. (n.1) ("'Used or attempted to use' includes directing, commanding, encouraging, . . . procuring, recruiting, or soliciting.").

### iii.

Smith's third challenge is to the district court's application of a "bodily injury" sentencing enhancement under U.S.S.G. § 2B3.1(b)(3)(A) to Count 12S.

The Sentencing Guidelines provide for a two-level sentencing enhancement if any victim sustains a "bodily injury" during a robbery. U.S.S.G. § 2B3.1(b)(3)(A).  "Bodily injury" is defined "as any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 2B3.1, comment. (n.1); U.S.S.G. 1B1.1, comment. (n.1(B)).

---

[9] Carl Turner—one of the primary participants in the bank robbery charged in Count 12S—testified extensively at trial regarding the planning and execution of the operation. Amongst other things, he testified that the group that participated in the robbery met beforehand, and Smith assigned each person their role.

No. 13-20542

The PSR recounts that during the offense charged in Count 12S, "Turner approached an employee sitting in a cubicle adjacent to the lobby, pointed a pistol at her, grabbed her by her hair and shirt, and threw her to the ground. . . . Turner then approached a customer who was sitting in a chair, pointed a pistol at her, grabbed her, and threw her to the ground. Turner then kicked the customer once she was on the ground and threatened to kill her if she moved. . . . Johnson walked the bank employee to the vault by shoving her in the back. . . . Johnson then pushed bank employee toward the vault bars, causing a scratch to her left hand, which caused her pain and discomfort. . . . As Turner and [Johnson] were leaving the bank. . . . [a] customer was grabbed, pushed, and thrown to the ground of the bank . . . Officers interviewed a bank employee who reported sustaining bruising and a small amount of hair loss from the . . . assault."

Smith argues that the evidence only shows that victims sustained minimal injuries rather than *significant* injuries as required under the Guidelines. However, "[w]ithin this circuit, we have affirmed the application of the bodily-injury enhancement in cases involving minor but identifiable injuries," *Washington*, 500 F. App'x at 283 (collecting cases from the Fifth Circuit and other circuits), including injuries similar to the ones described in the PSR, *see, e.g.*, *United States v. Grajeda*, 259 F. App'x 673, 675, 2007 WL 4460991, at *1 (5th Cir. 2007) (applying a "bodily injury" enhancement where defendant "kicked and struck the agent on the right side of his chest causing bruising and pain").[10]

---

[10] *See also United States v. Lister*, 229 F. App'x 334, 340 (5th Cir. 2007) (victim "had numerous scratches, bruises, lumps, and bumps after the assault and . . . complained of pain in his ankle"); *United States v. Jefferson*, 258 F.3d 405, 413 (5th Cir. 2001) (victim sustained "an injury to her head . . . described as a 'knot', in addition to cuts, scrapes, and bruises" (alteration in original)).

Therefore, the district court did not err in applying the "bodily injury" sentencing enhancement.

### iv.

Smith's final challenge is to the district court's application of a two-point offense level enhancement for obstruction of justice to Count 12S under U.S.S.G. § 3C1.1. The PSR recounts that an unidentified witness testified that an "inmate stated he was sent by [Smith] to find [Carl Turner] and inform him that he will get stabbed . . . when he gets back to his cell if he testifies against [Smith]." Smith argues that there was insufficient evidence to support the enhancement because the relevant information in the PSR was limited to uncorroborated statements by an unidentified informant. *See United States v. Rogers*, 1 F.3d 341, 343–44 (5th Cir. 1993).

We need not decide whether there was sufficient corroboration of the confidential informant's statements, because any error in applying the enhancement was harmless. Removing this sentencing enhancement would reduce Smith's offense level from 41 to 39. With a criminal history category of IV, Smith's Guidelines sentencing range would remain at 360 months to life. Thus, any error was harmless as this enhancement had no impact on Smith's Guidelines sentencing range. *See Garcia-Gonzalez*, 714 F.3d at 315.

### III.     CONCLUSION

For the foregoing reasons, we AFFIRM.