# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20697

United States Court of Appeals
Fifth Circuit

**FILED**

February 1, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CLARENCE BERNARD BUCK, also known as BB; KENDAL ALLEN,

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

Defendants-Appellants Clarence Bernard Buck and Kendall Allen (collectively "defendants") were charged with various crimes, including robbery in violation of the Hobbs Act, 18 U.S.C. § 1951(a). They proceeded to jury trial, but three days into it the district court granted their motions for a mistrial. At the conclusion of the second jury trial, Buck and Allen were convicted on all counts. Buck was sentenced to 1,846 months of imprisonment, and Allen was sentenced to 1,435 months. They now appeal, contending that the retrial of their case violated their constitutional rights and that the classification of Hobbs Act robbery as a crime of violence was error. In addition, Buck asserts that the Hobbs Act robbery jury instruction was flawed, the abduction

No. 15-20697

enhancement to his sentence was error, and his restitution obligation should be shared with others; and Allen appeals his 119-year sentence as a violation of the Eighth Amendment and the introduction of his statements to a government witness as reversible error. We affirm.

## I.

## FACTS AND PROCEEDINGS

### A.    Facts

Buck and Allen, along with other individuals, were accused of participated in armed robberies of various T-Mobile stores and a flea market jewelry store in the Houston area between November 2012 and July 2013. The robberies followed similar patterns, including forcing store employees from the front of the store to the back, where cellular phones were stored. All of the robberies in question included defendants or their co-conspirators brandishing firearms during the commission of those crimes.

### B.    Procedure

In March 2015, defendants entered pleas of not guilty and proceeded to trial by jury. Three days into the trial, it came to light that the government had not turned over all of the required discovery materials, including witness statements, a police interview with Buck, and two police lineups. The district court held a hearing in which it admonished the government for its failure to turn over such materials. The court then granted defendants' motions for mistrial, but it denied their motions for dismissal of the case with prejudice.

A second jury trial took place some five months later, in August 2015. Between the first and second trials, defendants again filed motions to dismiss the case with prejudice, which the court denied in a summary order. The jury convicted Buck and Allen of conspiracy to interfere with commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). Buck was also convicted of (1) seven counts of committing, or aiding and abetting, Hobbs Act robbery, (2)

No. 15-20697

seven counts of using and carrying, or aiding and abetting the use of and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A), and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Allen was convicted of six counts of Hobbs Act robbery and six counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).

The district court sentenced Buck to concurrent sentences of 240 months of imprisonment on the robbery counts; a consecutive 22-month term on the charge of being a felon in possession of a firearm; a mandatory consecutive 84-month term of imprisonment on one firearm count; and five additional consecutive terms of 300 months of imprisonment on the remaining firearm counts, for a total of 1,846 months of imprisonment. The court sentenced Allen to 151 months for the robberies; a mandatory consecutive term of 84 months; and four additional consecutive terms of 300 months of imprisonment on the firearms counts for a total of 1,435 months of imprisonment. Both defendants appeal their convictions and sentences.

## II.

## THE SECOND TRIAL

Defendants challenge the second jury trial for different reasons. Allen insists that the second trial amounts to double jeopardy and that his constitutional rights under *Brady v. Maryland*[1] were violated. Buck asserts

---

[1] 373 U.S. 83 (1963).

No. 15-20697

that the district court should have sanctioned the government for discovery violations by dismissing the case against him with prejudice.

## A.    Standard of Review

The Fifth Amendment protects individuals from "repeated prosecutions for the same offense."[2] We review challenges to the prohibition against double jeopardy *de novo*.[3] We review sanctions imposed by the district court for discovery-related violations for abuse of discretion.[4] We only reverse the trial court's factual findings related to double jeopardy challenges and discovery-related violations if they are clearly erroneous.[5]

## B.    Analysis

The government may not use a jury as a focus group; neither may it use a jury trial as a discovery tool.[6] When a trial is terminated over defense objection, retrial is prohibited absent "manifest necessity."[7] Retrial of a case following a motion for mistrial by the defense is allowed, however, unless government conduct that was "intended to 'goad' the [defense] into moving for a mistrial" prompted the defense's motion.[8]

In this case, it was not until the third day of the initial trial that it came to light that the government had failed to turn over some discovery materials, including various interviews with witnesses – including Buck – and records of police line-ups. When that matter was brought to the attention of the district court, it held a hearing and granted defendants' motion for mistrial, but denied defendants' motions for dismissal of the case with prejudice.

---

[2] *United States v. Dinitz*, 424 U.S. 600, 606 (1976).

[3] *United States v. Dugue*, 690 F.3d 636, 637-38 (5th Cir. 2012).

[4] *United States v. Dvorin*, 817 F.3d 438, 453 (5th Cir. 2016).

[5] *See Dugue*, 690 F.3d at 637-38.

[6] *See United States v. DiFrancesco*, 449 U.S. 117, 128 (1980).

[7] *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011).

[8] *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982).

4

No. 15-20697

1. Allen's Claim of Double Jeopardy

Allen contends that the government "goaded" him into seeking a mistrial because the trial was "not going well" for the government and defense counsel had pointed out weaknesses in the government's case. "Goading" is narrowly defined, and "[g]ross negligence by the prosecutor, or even intentional conduct that seriously prejudices the defense, is insufficient" to be characterized as "goading."[9] "Instead, there must be 'intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.'"[10]

The government counters that it had no prior knowledge of the missing items of discovery. It says that it asked the state agencies that initially investigated defendants' crimes if they had turned over "everything" in their possession, to which the state agencies responded affirmatively. The government also relies on its open-file discovery policy and on the fact that it continued to produce materials promptly as it received them.

It is true that in the first trial, the government heard defendants' opening statements and their cross-examination of government witnesses, and had the opportunity to gauge jury reactions to their own witnesses. Regardless, the "objective facts and circumstances" in this case do not suggest that the prosecutors engaged in "conduct . . . intended to provoke the defendant[s] into moving for a mistrial."[11]  We are satisfied that the government did not goad Allen into seeking a mistrial and that his double jeopardy rights thus were not violated.

---

[9] *United States v. El-Mezain*, 664 F.3d 467, 561 (5th Cir. 2011).

[10] *Id.* (quoting *United States v. Wharton*, 320 F.3d 526, 531-32 (5th Cir. 2003)).

[11] *Kennedy*, 456 U.S. at 675, 679.

No. 15-20697

## 2. Allen's *Brady* Claim

Allen also urges that the government failed to meet its constitutional obligations imposed by *Brady*.[12] Under *Brady*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."[13] A *Brady* violation requires that the evidence withheld by the government be either exculpatory or impeaching, and that prejudice ensued.[14] Allen has not identified any exculpatory or impeaching evidence that was withheld by the prosecution. The retrial of the criminal case against Allen did not violate his constitutional rights under *Brady* and its progeny.

## 3. Buck's Claims

Buck acknowledges that his being retried is not barred by the double jeopardy clause. Instead, Buck contends that, given the concerns underlying double jeopardy and the rules of procedure,[15] the district court erred by allowing the retrial. We have held that, with regard to the imposition of sanctions for discovery violations, district courts should consider: "1) the reasons why disclosure was not made; 2) the amount of prejudice to the opposing party; 3) the feasibility of curing such prejudice with a continuance of the trial; and 4) any other relevant circumstances."[16]

As to the first factor, the government again asserts that the failure to disclose the evidence in question was not intentional. Generally, a district court will not impose severe sanctions in the absence of bad faith.[17] As

---

[12] 373 U.S. 83.

[13] *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)).

[14] *Id.* at 281-82.

[15] The procedural rules that Buck appears to be relying on are *Brady* and Rule 16 of the Federal Rules of Criminal Procedure.

[16] *United States v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).

[17] *Dvorin*, 817 F.3d at 453.

discussed above, nothing in the record suggests that the government's failure to disclose evidence was intentional. Thus, this factor weighs against dismissal with prejudice as a sanction.

As to the second factor, Buck – like Allen – argues that by hearing his opening statement and his defense theory in the first trial, the government was given a significant advantage. However, there is no evidence that defendants were prejudiced by the first trial. Thus, this factor is neutral.

The third factor weighs against dismissal with prejudice as a sanction because Buck had almost five months to prepare a new strategy based on the new discovery.

As to the fourth factor, Buck does not address other relevant circumstances, but relies exclusively on policy arguments that his case should be dismissed with prejudice as a sanction for the government's discovery violations. Even if we were persuaded that such policy arguments weigh in favor of dismissal, the district court did not abuse its discretion in refusing to dismiss the case based on the government's discovery violations.

## III.

### HOBBS ACT ROBBERY AS A CRIME OF VIOLENCE

Defendants insist that their Hobbs Act robbery convictions do not qualify as crimes of violence under 18 U.S.C. § 924(c)(3)(A) and that they cannot

7

qualify under § 924(c)(3)(B) because the clause is vague and crediting it would violate due process.

## A.     Standard of Review

Because this challenge is asserted for the first time on appeal, we review it for plain error.[18]

## B.     Analysis

Section 924(c) punishes "any person who, during and in relation to any crime of violence uses or carries a firearm. . . ."[19] When the firearm is brandished during and in relation to any crime of violence the statutory minimum becomes seven years' imprisonment.[20]

Section 924(c) contains two definitions of a crime of violence. Under § 924(c)(3)(A),  a crime of violence is a felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another."[21] Under § 924(c)(3)(B), which is referred to as the "residual clause," a crime of violence is a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[22]

Whether a particular offense is a crime of violence is a question of law for the court to resolve.[23] The Supreme Court applies a categorical approach, looking only to the statutory definitions – i.e., the elements – of a defendant's offense, and not to the particular facts underlying the convictions.[24] The Hobbs Act defines robbery, in pertinent part, as "the unlawful taking or obtaining of

---

[18] *United States v. Williams*, 343 F.3d 423, 431 (5th Cir. 2003).

[19] 18 U.S.C. § 924(c)(1)(A).

[20] 18 U.S.C. § 924(c)(1)(A)(ii).

[21] 18 U.S.C. § 924(c)(3)(A).

[22] 18 U.S.C. § 924(c)(3)(B).

[23] *United States v. Credit*, 95 F.3d 362, 364 (5th Cir. 1996).

[24] *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).

personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property."[25] Allen argues[26] that because an individual could be convicted under the Hobbs Act for nothing more than threatening some future injury to the property of a person who is not present, this cannot be a crime of violence under the statute.[27]

In *United States v. Hill*, the Second Circuit concluded that the Hobbs Act's reference to actual or threatened force or violence "would appear, self-evidently, to satisfy" the standard needed for a crime of violence under § 924(c)(3)(A).[28] In addition, the Third, Eighth, and Eleventh Circuits have held that the Hobbs Act definition of robbery describes a crime of violence under § 924(c)(3)(A), and the Ninth Circuit has reached the same conclusion in an unpublished opinion.[29] It was not error – plain or otherwise – for the district court to classify a Hobbs Act robbery as a crime of violence.

---

[25] 18 U.S.C. § 1951(b)(1).

[26] Buck's challenge to § 924(c) appears to rely only on his claim that § 924(c)(3)(B) is unconstitutional. As discussed below, we need not address § 924(c)(3)(B) to hold that the district court did not err in classifying the Hobbs Act robbery as a crime of violence.

[27] Allen argues that because his alleged criminal conduct could be defined as "obtaining of personal property . . . in the presence of another, against his will by means of . . . fear of injury, immediate or future, to . . . the . . . property of a . . . member of his family," his conviction cannot be a crime of violence because it does not require the kind of violent force needed for a crime of violence under this clause of § 924. Allen cites *Johnson v. United States*, for the proposition that the Supreme Court interprets "physical force" to mean "*violent* force – that is, force capable of causing physical pain or injury to another person." 559 U.S. 133, 140 (2010).

[28] 832 F.3d 135, 140 (2d Cir. 2016).

[29] *United States v. Robinson*, 844 F.3d 137, 140-41 (3d Cir. 2016); *In re Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Howard*, 650 F.. App'x 466, 468 (9th Cir. 2016).

No. 15-20697

## IV.

## HOBBS ACT ROBBERY JURY INSTRUCTION

Buck also objects to the district court's use of the Fifth Circuit pattern jury instruction[30] on the Hobbs Act to the extent that it does not require the jury to find that he had a culpable mental state regarding the effect of his conduct on interstate commerce.

### A.    Standard of Review

We review the use of **a** particular jury instruction for abuse of discretion.[31] We ask "whether the instruction, taken as a whole, is a correct statement of law and whether it clearly instructs jurors as to the principle of the law applicable to the factual issues confronting them."[32]

### B.    Analysis

The Hobbs Act imposes criminal penalties on, "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to

---

[30] The Fifth Circuit pattern jury instruction for Hobbs Act robbery, which was given at the second trial, states in relevant part:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
> *First:* That the defendant obtained *[attempted to obtain][conspired to obtain]* property from another with that person's consent;
> *Second:* That the defendant did so by wrongful use of actual or threatened force, violence, or fear; and
> *Third:* That the defendant's conduct in any way or degree obstructed *[delayed][affected]* commerce *[the movement of any article or commodity in commerce]*.

> The government is not required to prove that the defendant knew that his conduct would obstruct *[delay][affect]* commerce *[the movement of any article or commodity in commerce]*. It is not necessary for the government to show that the defendant actually intended or anticipated an effect on commerce by his actions. All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect commerce. If you decide that there would be any effect at all on commerce, then that is enough to satisfy this element. Fifth Cir. Pattern Jury Instr. 2.73A (2015).

[31] *United States v. Anderson*, 560 F.3d 275, 279 (5th Cir. 2009).

[32] *Id.* (internal quotation marks omitted).

10

do . . . ."[33] This language "is unmistakably broad . . . reach[ing] any obstruction, delay, or other effect on commerce, even if small, and the Act's definition of commerce encompasses 'all . . . commerce over which the United States has jurisdiction.'"[34]

Buck submitted proposed jury instructions, which included the requirement that the government prove the "defendant knew that his conduct, or the conduct of another which he aided or abetted, would or could materially obstruct, delay, or affect commerce." He requested that the final paragraph of the portion of the pattern jury instruction, which states that the government is not required to prove intent, knowledge, or anticipation of an affect on commerce, not be submitted to the jury. The district court denied Buck's request and used the entire Hobbs Act pattern jury instruction to instruct the jury.

We have held that the Hobbs Act "does not require that the defendant have specifically intended to affect interstate commerce," or that he acted with knowledge interstate commerce would be affected.[35] Courts have routinely held that a criminal defendant need not know of a federal crime's connection to interstate commerce to be found guilty.[36] Thus, the use of the Fifth Circuit pattern jury instruction for Hobbs Act robbery was not an abuse of discretion by the district court.

---

[33] 18 U.S.C. § 1951(a).

[34] *Taylor v. United States*, 136 S. Ct. 2074, 2079 (2016) (quoting 18 U.S.C. § 1951(b)(3)).

[35] *United States v. Hebert*, 131 F.3d 514, 523 (5th Cir. 1997).

[36] *See, e.g. id.*; *United States v. Jinian*, 725 F.3d 954, 964-66 (9th Cir. 2013); *United States v. Lindemann*, 85 F.3d 1232, 1241 (7th Cir. 1996); *United States v. Blackmon*, 839 F.2d 900, 907 (2d Cir. 1988).

No. 15-20697

## V.

## THE ABDUCTION ENHANCEMENT

Buck objects to an enhancement of his sentence based on abduction.

### A.    Standard of Review

We review the district court's interpretation of the Sentencing Guidelines *de novo*.[37] We review the district court's factual findings for clear error.[38]

### B.    Analysis

The district court applied a four-level enhancement for abduction to Buck's base offense level, pursuant to Sentencing Guideline § 2B3.1(b)(4)(A). That provision allows enhancement "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape . . . ."[39] "Abducted" is defined as "a victim was forced to accompany an offender to a different location."[40] Buck objects to this enhancement, claiming that the facts at issue in this case are distinguishable from case law that supports the "abduction" enhancement and that the term "location" in the Sentencing Guidelines is ambiguous.

Buck notes that the presentence report did not specifically address the conduct that led to the abduction enhancement. He assumes that it refers to the movement of victim employees from the front to the back of the T-Mobile stores during the robberies of those stores.

We have repeatedly construed the "abduction" enhancement as applicable when a victim is forced from one part of a building to another.[41] We

---

[37] *United States v. Smith*, 822 F.3d 755, 762 (5th Cir. 2016).

[38] *Id.*

[39] U.S. SENTENCING GUIDELINES MANUAL § 2B3.1(b)(4)(A) (U.S. SENTENCING COMM'N 2015).

[40] U.S. SENTENCING GUIDELINES MANUAL § 1B1.1 cmt. 1(A) (U.S. SENTENCING COMM'N 2015).

[41] *See Smith*, 822 F.3d at 763-64 (forcing victims to move from one area of a bank to another to aid in stealing money was "abduction" for the purposes of the Guidelines); *United*

12

have also indicated that the term "different location" should be interpreted with flexibility.[42] We are satisfied that the conspirators forcing T-Mobile employees to move from the front of the stores to the backs was sufficient to make the abduction enhancement applicable.[43]

# VI.

# THE RESTITUTION AWARD

Buck claims that his restitution obligation should be allocated to other parties, including cooperating witnesses Deandre White and Trent Davis, and to Rafey Khan and Zeeshan Yasin, two individuals who profited by purchasing the stolen items.

## A.     Standard of Review

We review whether a restitution award is "permitted by the appropriate law" de novo.[44] We review "the propriety of a particular award for an abuse of discretion."[45]

## B.     Analysis

The district court ordered Buck to pay $789,271.74 in restitution to the robbery victims. That court's judgment specified that Buck's obligation was "joint and several with any co-defendant who has been or will be ordered to pay restitution." Co-defendant Allen was also held responsible for the full amount of restitution, and co-defendant Donald Holmes was held responsible for a portion of the restitution. However, White, Davis, Khan, and Yasin, were not

---

*States v. Hawkins*, 87 F.3d 722, 727-28 (5th Cir. 1996) (finding that forcing victims to move 50 to 60 feet in the same parking area was "abduction" for the purposes of the Guidelines).

[42] *United States v. Johnson*, 619 F.3d 469, 472 (5th Cir. 2010).

[43] Buck also contends that the term "location" and its use in the Sentencing Guidelines is ambiguous. He asserts that the rule of lenity should be applied and his sentence vacated. However, as used in the Guidelines, this term does not have the kind of "grievous ambiguity" that implicates the rule of lenity. *See Muscarello v. United States*, 524 U.S. 125, 139 (1998). Buck's argument that the term "location" is ambiguous must fail.

[44] *United States v. Sheets*, 814 F.3d 256, 259 (5th Cir. 2016).

[45] *Id.*

convicted of the robberies that gave rise to this restitution. White was an unindicted co-conspirator. Davis, Khan, and Yasin were named in the original indictment as Hobbs Act co-conspirators, but they ultimately entered pleas of guilty to different offenses. T-Mobile and the jewelry store were "directly and proximately harmed as a result of the commission" of the Hobbs Act robberies, not the crimes for which those witnesses were convicted.[46] The district court thus lacked the authority to make those parties jointly and severally liable for the restitution obligation.[47] The district court did not abuse its discretion in not holding White, Davis, Khan, or Yasin, jointly and severally liable for the restitution award in this case, so Buck's objection fails.

## VII.

### ALLEN'S SENTENCE AND THE EIGHTH AMENDMENT

Allen argues that his 119-year sentence violates the Eighth Amendment because it is effectively a life sentence which is reserved for only the most "existential" crimes. He also insists that his sentences should run concurrently.

**A.     Standard of Review**

The Eighth Amendment prohibits cruel and unusual punishment.[48] We review an Eighth Amendment challenge to the constitutionality of a sentence *de novo*.[49]

**B.     Analysis**

To reach Allen's 119-year sentence, the district court imposed terms of 151 months for each of his six robbery convictions under the Hobbs Act, then

---

[46] *Sheets*, 814 F.3d at 258 n.3. White was convicted of the unrelated offense of conspiring to possess with intent to distribute more than five kilograms of cocaine. Davis was convicted of an unrelated robbery. Khan and Yasin were convicted of misprision of a felony, in violation of 18 U.S.C. § 4, for failing to report the T-Mobile robberies.

[47] *See* 18 U.S.C. §§ 3663A(a)(2); 3664(f)(1)(A).

[48] U.S. CONST. amend VIII.

[49] *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014).

No. 15-20697

added a series of consecutive terms for the use of firearms during the robberies, as required by 18 U.S.C. § 924(c)(1). Section 924(c) mandates a minimum sentence of seven years of imprisonment when a defendant brandishes a firearm during and in relation to a crime of violence.[50] Section 924(c)(1)(D)(ii) requires that those seven years run consecutively to the prison term for the underlying crime of violence.[51] Section 924(c)(1)(C)(i) imposes additional consecutive terms of 25 years for every "second or subsequent conviction under" the statute.[52] This includes instances when the first and subsequent convictions occur in a "single proceeding."[53] Allen's sentence is thus within the statutory guidelines applicable to his case.

A sentence imposed within statutory limits may nevertheless violate the Eighth Amendment if it "is so disproportionate to the crime committed that it shocks human sensibilities."[54] We conclude that this sentence does not shock human sensibilities and is consistent with other decisions in this court.[55] The length of Allen's sentence is not unconstitutional.

## VIII.

## ALLEN'S STATEMENTS TO GOVERNMENT WITNESSES

Finally, Allen urges that admission of the statements he made while he was in jail with a government witness, Son-Tanna Hewitt, deprived him of a fair trial.

---

[50] 18 U.S.C. § 924(c)(1)(A)(ii).

[51] 18 U.S.C. § 924(c)(1)(D)(ii).

[52] 18 U.S.C. § 924(c)(1)(C)(i).

[53] *See Deal v. United States*, 508 U.S. 129, 131 (1993).

[54] *Yeager v. Estelle*, 489 F.2d 276, 276-77 (5th Cir. 1973).

[55] In *United States v. Thomas*, the defendant was convicted of five robberies, each with a firearm, and was sentenced to 1,435 months' imprisonment. 627 F.3d 146, 159-60 (5th Cir. 2010). We held that the "sentence was not grossly disproportionate to the offenses he committed." *Id.* at 160.

No. 15-20697

## A. Standard of Review

We review preserved challenges to the admission of evidence for abuse of discretion.[56]

## B.    Analysis

Hewitt was not involved in the November robberies; he was only involved in the July robbery, to which Allen asserts he had no connection.[57] Allen alleges that three months after Hewitt entered into a deal with the government he was placed in the same segregation unit as Allen. Hewitt was called by the government and testified as to Allen's jailhouse admissions to having committed each element of the crimes.

Allen argues that the use of Hewitt's jailhouse testimony is essentially an ambush by the prosecution because "confessions" are exempt from disclosure under Rule 16. Allen insists that, but for Hewitt's testimony, he would have been acquitted because the only other evidence against him was "a murky video and three highly discreditable witnesses."

The Supreme Court has repeatedly held that introduction of a defendant's statement to a cellmate does not violate the Sixth Amendment right to counsel.[58] Jailhouse snitches are not inherently unreliable.[59] Defendants are entitled to confront and cross-examine such witnesses to discredit them, and Allen was afforded that right.[60] In addition, the district court instructed this jury that testimony of cooperating accomplice witnesses

---

[56] *See United States v. Hefferon*, 314 F.3d 211, 222 (5th Cir. 2002). Allen objected to the testimony in question in a pretrial motion and renewed his motion at trial.

[57] Five of the robberies that form the basis of this case occurred in November 2012. One occurred in July 2013.

[58] *Kansas v. Ventris*, 556 U.S. 586, 591-92 (2009).

[59] *Id.* at 594 n.*.

[60] *See Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012).

"is always to be received with caution and weighed with great care." The district court did not abuse its discretion in allowing Hewitt to testify.

## IX.

## CONCLUSION

For the foregoing reasons, we AFFIRM all convictions of Buck and Allen as well as the sentences imposed by the district court.